IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROSIE B. JEFFERSON,
    Plaintiff,

v.                                     No:   3:05cv68/MCR/MD

JO ANNE B. BARNHART,
Commissioner of Social Security,
    Defendant.
_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Jefferson's application for disability insurance benefits under Title II of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

PROCEDURAL HISTORY

    Plaintiff filed an application for disability insurance benefits on February 11,

2003 claiming to have been disabled since 1993. Her application was denied initially and on reconsideration and she requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on July 13, 2004 at which plaintiff was represented by counsel and testified in behalf of her application. The ALJ rendered an unfavorable decision on November 19, 2004 (Tr. 12-18) and the Appeals Council declined review (Tr. 3-5), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

In her memorandum in support of her appeal (see doc. 11, pp. 1-2) plaintiff presents a somewhat different procedural history. She says that she was disabled beginning in 1993 and that the Commissioner accepted her as disabled in February 1997. She was paid benefits for some time, and in 2002 her case came up for review. However, she missed her consultative examination and her benefits were stopped effective November 1, 2002 (sic). She appealed this decision but her caseworker died and the paperwork was lost, so she was advised to start a new application. The legal effect of this problem will be discussed below.

## FINDINGS OF THE ALJ

Relative to the issues raised in this claim, the ALJ found that plaintiff had severe conditions of back disorder and hypertension but that these severe impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that the plaintiff's allegations concerning her limitations were not totally credible; that the plaintiff had the residual functional capacity to perform light work with limitations in performing postural movements; that she was unable to perform her relevant past work as a poultry housing inspector; that she was a younger individual with a limited education and no transferrable skills; that she had the residual functional capacity to perform

substantially all of the full range of light work and that the medical-vocational rules, Rule 202.17, would direct a conclusion of not disabled; that plaintiff's capacity for light work was substantially intact and had not been compromised by any non-exertional limitations; and that plaintiff was not under a disability as defined under the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that

the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### PLAINTIFF'S MEDICAL HISTORY

The medical documentation in the administrative record begins on May 16, 2001 when plaintiff consulted Alexander Neiman, M.D. in order to establish a

relationship with a new physician. Dr. Neiman noted that plaintiff had multiple health problems, that she claimed to hurt practically all the time, that she was a poor historian, that she smoked and that she weighed 214 pounds. Her physical examination was not particularly revealing other than showing a trace of pre-tibial swelling. Dr. Neiman's impression was hypertension, elevated cholesterol, chronic obstructive pulmonary disorder (COPD) and tobacco smoking. She was told to quit smoking, to check her blood pressure and to return in one month (Tr. 342-343). Dr. Neiman became plaintiff's primary treating physician, and in fact treated her over the period of the next three years. Unfortunately, Dr. Neiman's office notes are handwritten and are not consistently legible. Nevertheless, a complete review of his notes indicates that plaintiff had multiple conditions and that her symptoms waxed and waned. For example, on June 19, 2001, she indicated that she was feeling well (Tr. 341). She indicated that she was feeling well, or feeling better, or feeling fair on August 22, 2001 (Tr. 324), on September 19, 2001 (Tr. 316), on December 4, 2001 (Tr. 315), on January 2, 2002 (Tr. 307), on February 5, 2002 (Tr. 301), on March 19, 2002 (Tr. 297), on April 22, 2002 (Tr. 292), on May 22, 2002 (Tr. 287), on July 9, 2002 (Tr. 275), on September 9, 2002 (Tr. 268), on December 4, 2002 (Tr. 258), on March 19, 2003 (Tr. 242), on December 15, 2003 (Tr. 217), and on February 10, 2004 (Tr. 201). By contrast, on July 23, 2001 she reported a fluttering in her chest (which did not result in any further treatment)(Tr. 334), on February 19, 2002 she stated that she hurt all the time, including her neck, back, hips, and knees, and was anxious, stressed out, and couldn't sleep (Tr. 299), on June 5, 2002, she complained of intermittent neck pain (Tr. 282), on November 3, 2002 she went to the emergency room with angina, but a nuclear stress test and an EKG stress test were read as normal (Tr. 131-132, 264-265), and on January 22, 2003, she complained of back pain with walking, radiating into her legs, which was sometimes excruciating (Tr. 257). Two days later she underwent an MRI of the lower back which revealed a small disc

protrusion at L5-S1 with disc degeneration but no loss of disc height.  The report was otherwise normal (Tr. 256).  On January 15, 2004 plaintiff reported that she was feeling bad with swelling and numbness in her fingers and feet.  She also indicated that she was frightened because her brother had recently had a massive heart attack and because her heart occasionally fluttered (Tr. 213).  Thus, two weeks later, an ECG and a stress ECG were administered and were read as normal with no evidence of a myocardial infarction (Tr. 206-209).  On April 13, 2004, she indicated that she was still having "palpitations."  (Tr. 199).

It is also noteworthy that on numerous occasions Dr. Neiman noted that plaintiff's impairments were either stable or controlled and that her COPD was in remission (Tr. 242-258, 262, 275, 282, 297).  He also noted that plaintiff had poor compliance with medication instructions and with instructions to lose weight and quit smoking.  He noted that she "skips her meds" (Tr. 258) and had not quit smoking or worked on her weight reduction program (Tr. 262, 275, 297).  At other times she was taking her medication (Tr. 297).  In sum, Dr. Neiman treated plaintiff in his office, and did not hospitalize her or refer her for anything other than the aforementioned tests.  He prescribed the medications plaintiff needed, and continued throughout to advise her to quit smoking and to lose weight.

On November 6, 2003 Dr. Neiman filled out a Physical Capacities Evaluation form (PCE), in which he opined that plaintiff could sit for no more than 30 minutes in a day, and walk or stand for no more than 30 minutes in a day; that she would need to lie down several times a day; that she could lift no more than five lbs., that she could use her hands but not her feet for repetitive tasks, that she would have some postural limitations; that her medication would make her drowsy;, and that her pain would be exacerbated by work (Tr. 227-230).  Dr. Neiman also filled out a Clinical Assessment of Pain form (CAP), in which he opined generally that plaintiff's pain was so severe as to preclude her from most activities (Tr. 231-232).

In addition to Dr. Neiman, plaintiff saw several specialists. In February 2002 she saw Joseph Shalit, M.D., a cardiologist, for a six month follow up (the record does not show when Dr. Shalit saw the plaintiff earlier). He indicated that she had no evidence of coronary artery disease and noted that she had atypical angina pectoris with hypertension and that she should continue her medication (Tr. 193-195). Plaintiff saw Dr. Shalit again in early 2004 for consultation after, as noted above, her brother had suffered a heart attack, and her condition was essentially the same as it had been in 2002 (Tr. 186-187, 191-194).

On March 11, 2004, plaintiff had pain in her left knee and was seen by Alfred Cardet, M.D., an orthopedist, who on x-ray found no bony abnormality but swelling in the left knee indicating a possible torn meniscus. Her left knee was aspirated and injected with Kenalog and Marcaine with some immediate relief (Tr. 351). The record does not show any further treatment by Dr. Cardet.

The State Office of Disability Determination referred plaintiff to Joseph M. Harper, M.D., who examined her on July 24, 2003. Plaintiff was 5'5" tall, weighed 211 pounds, and had slightly elevated blood pressure. Her heart was not enlarged to percussion and there was normal sinus rhythm without murmurs. There was no enlargement in the abdominal aorta and no bruits over the femoral arteries. Plaintiff stood and walked without difficulty with no evidence of clubbing, cyanosis or ischemia of the digits or nails. Flexibility in the cervical and thoracic spine was normal with full strength and no pain. The same findings were made with respect to plaintiff's arms and legs. In the lumbar spine there was no misalignment, crepitation, tenderness or muscle spasm. Straight leg raising was negative, Dr. Harper noted some difficulty and obvious moderate discomfort when plaintiff sat up from the supine position. Her neurological examination was normal. Dr. Harper concluded that plaintiff had a history of hypertension with control using multiple medications; a history of COPD with persistence of tobacco use; and a history of

back pain without evidence of radicular involvement. He also indicated that full cardiac and pulmonary evaluation would be of benefit (Tr. 154-160).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to apply the correct legal standard, in improperly rejecting the opinion of her treating physician, in failing to apply the correct pain standard, and in applying the medical-vocational guidelines, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.   Standard of review.

The standard of review for this case is as set out above. Plaintiff argues for another standard - that applicable to termination of benefits. Under the latter standard, pursuant to 20 C.F.R. § 404.1594(f), the Commissioner determines whether a disability continues or ends in eight steps, which go generally to whether a claimant's condition has improved sufficiently to allow work. A finding of disability or no disability at any step renders further evaluation unnecessary. Based on her recitation of the procedural history, plaintiff argues that the ALJ erred in terminating her prior benefits. However, that is not the posture of the case now before this court. Plaintiff is appealing an unfavorable decision of November 18, 2004, which addressed only an application dated February 11, 2003. Neither the prior application nor the prior decision was discussed by the ALJ, and as far as the undersigned can find, neither of those documents, nor any of the materials relevant to them, are in the administrative record now before the court. Plaintiff makes reference to the "Social

Security Decision dated February 14, 1997," but there is no such document in the administrative file. This court will not speculate on what may have happened prior to November, 2002 when plaintiff's benefits were allegedly terminated. Rather, the court must deal with a single application and with the decision arising from it. Indeed, plaintiff did not directly raise this issue in her request for review to the Appeals Council. She mentioned the earlier disability determination and asked the Appeals Council to find her disabled from November 1, 2000, but she did not specifically present this case as one involving termination of benefits, as clearly it was not (Tr. 8) Plaintiff's contention in *this* appeal, that the ALJ erred in terminating plaintiff's benefits, is misplaced. If plaintiff wants to challenge the termination of her benefits, this is not the place to do it. The ALJ did not apply the incorrect legal standard.

    2.    <u>Treating physician's opinion.</u>

Plaintiff next contends that the ALJ erred in discounting the opinion of Dr. Neiman. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984). In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053. The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for

disregarding the opinion of the treating physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

Plaintiff makes several points in her attack on the ALJ's opinion concerning the opinions expressed in Dr. Neiman's PCE and CAP. First, she argues that the ALJ misrepresented the facts in noting that Dr. Neiman's opinion did not agree with his office records. She concedes that many of her conditions were stable (which, she points out, does not mean symptom-free) or in remission, and that she needed to lose weight and quit smoking, but argues that this overlooks many conditions that were not stable or were not in remission. Specifically, she points to her bulging and degenerative discs, her knee pain, her glaucoma, her obesity and her chest pain.

While at first blush this seems to have possible merit, on closer examination it does not. Plaintiff unquestionably had back problems, including a mildly bulging disc, but nowhere in Dr. Neiman's notes does he record specific limitations concerning her back, other than recording her varying complaints. Plaintiff's knee pain was barely mentioned in Dr. Neiman's records, and when it arose he referred plaintiff to a specialist, who aspirated and injected the knee, with apparent success. Plaintiff's glaucoma was noted, but a vision test in August 2003 revealed normal vision (Tr. 184). Plaintiff's obesity was a condition that Dr. Neiman was concerned about, but he put the burden on the plaintiff to do something about it, which she did not do. Finally, plaintiff complained intermittently of chest pain, but she most often referred to it as a fluttering, and all cardiology reports were normal. Thus, the ALJ's finding that Dr. Neiman's records were far short of supporting a finding of total disability was supported by substantial record evidence.

Plaintiff next faults the ALJ for finding that plaintiff was non-compliant with her medical instructions. Plaintiff splits hairs, saying that at some point Dr. Neiman said plaintiff was taking her medications, while ignoring his statement that she sometimes skipped them, and that she kept smoking and did not lose weight. The weight and impact of these medical entries were for the ALJ to assess, and this court cannot say that his assessment was unsupported.

Plaintiff further contends that the ALJ overlooked, or downplayed, her knee problem, because the knee pain "was to such an extent that she agreed to endure painful knee injections of Kenalog and Marcaine to alleviate her symptoms." (Doc. 11, p. 15). This is something of a stretch. Aspiration and injections are commonplace, and to say that they prove pain was present sufficient to make this more than a one-time problem is unsupported by the record.

Finally, plaintiff faults the ALJ for relying on the opinion of the consulting physician, Dr. Harper. As noted above, the opinion of an examining physician is not entitled to the same degree of weight as that of a treating physician. However, where substantial record evidence supports ALJ's findings that the treating physician's opinions are not supported by his own, the opinion of an examining physician itself becomes entitled to significant weight.

Obviously the opinions of Dr. Neiman and Dr. Harper are different, but as the ALJ pointed out, much of what Dr. Neiman described was based on plaintiff's own descriptions of her symptoms. Underlying the pain standard (to be discussed fully in the next section) is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial

subsidiary fact of the truthfulness of subjective symptoms and complaints").[1] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler,* 761 F.2d 1545, 1548-49 (11th Cir. 1986). It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that belief. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination. Therefore, the ALJ did not err in discounting Dr. Neiman's opinion, and plaintiff is not entitled to reversal on this ground.

   3.   **Plaintiff's subjective complaints of pain.**

Plaintiff next contends that the ALJ erred in not accepting her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler,* 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted

---

[1] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Case No: 3:05cv68/MCR/MD

the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); *Kelley v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that

testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Plaintiff argues that the ALJ did not mention the appropriate Eleventh Circuit standard, but that is incorrect. He specifically referred to 20 C.F.R. § 404.1529, which is sufficient. *Wilson, supra*. The ALJ contrasted plaintiff's subjective complaints of pain with the negative findings by Dr. Harper, and noted that Dr. Neiman's opinion supporting the plaintiff's claims were inconsistent with his own medical records. The mild bulging in plaintiff's low back, without more, is not an "objectively determined medical condition . . . of a severity which can reasonably be expected to give rise to the alleged pain." The ALJ did not err in discounting plaintiff's subjective complaints of pain, and she is not entitled to reversal on this claim.

    4.    <u>Grids.</u>

Finally, plaintiff contends that the ALJ erred in relying on the medical vocational guidelines (grids) without the benefit of testimony from a vocational expert. In 1978 the Commissioner promulgated medical vocational guidelines to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "Where a plaintiff's qualifications correspond to the

job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983). However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

The plaintiff argues that the application of the grids was inappropriate due to the lack of evidence demonstrating her ability to perform a full range of light work because of the non-exertional limitation of pain.

The Commissioner's rules define "light work" in part:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Here the ALJ found that plaintiff had the residual functional capacity to perform light work, with limitations only in performing postural movements (Tr. 16). Plaintiff argues that "vocational expert testimony was required in this case to satisfy the Commissioner's burden of proof due to the presence of significant non-exertional limitations and her inability to perform the full range of sedentary (sic) work, as demonstrated by the opinions of her physicians." (Doc. 11, p. 21). Plaintiff does not identify her "significant" limitations other than by reference to her doctor's opinion, which the ALJ discounted. Postural limitations are not considered

significant limitations that would prevent a claimant from performing substantially all the jobs at a particular exertion level. SSR 85-15. Therefore, it was not necessary for the ALJ to obtain vocational expert testimony, and plaintiff is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 30th day of January, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

Case No: 3:05cv68/MCR/MD